# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| SARAH GORDON, and GWEN ZAGORSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> ENHANCED RECOVERY COMPANY, LLC, <br><br> Defendant. | Case No.: 20-cv-1416 <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br><br> Hon. Stephen C. Dries <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Sarah Gordon is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Gwen Zagorski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect debts incurred for personal, family, or household purposes.

6. Defendant Enhanced Recovery Company, LLC ("ERC") is a debt collection agency with its principal offices located at 8014 Bayberry Road, Jacksonville, Florida 32256.

7. ERC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. ERC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. ERC is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts relating to Plaintiff Gordon*

10. On or around February 19, 2020, Defendant mailed a debt collection letter to Plaintiff Gordon regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, namely household energy utility services.

12. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to the alleged debt inserted by the computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14. The header in Exhibit A states:

> February 19, 2020
> **Creditor:** WEC Energy Group
> **Original Creditor:** We Energies Utilities
> **Account Number:** XXXXXX7545
> **Amount of Debt:** $179.42
> **Reference Number:** ▇▇▇▇7963

15. Exhibit A also contains the following:

> Our records indicate that your balance with WEC Energy Group remains unpaid; therefore your account has been placed with ERC® for collection efforts. We are authorized to resolve your account for less than the full balance for a payoff amount of $134.57.

16. <u>Exhibit A</u> is confusing and misleading as the character and legal status of the alleged debt referenced in <u>Exhibit A</u>.

17. <u>Exhibit A</u> states that the "Creditor" is "WEC Energy Group," that the "balance with WEC Energy Group remains unpaid," and that the "Original Creditor" is "We Energies Utilities."

18. <u>Exhibit A</u> does not describe the relationship between the "Creditor: WEC Energy Group," and the "Original Creditor: We Energies Utilities."

19. The unsophisticated consumer understands that debts are freely assignable and would assume that We Energies Utilities had assigned the debt to a third-party purchaser of distressed utilities debts named "WEC Energy Group."

20. In fact, WEC Energy Group Inc. is a utility provider and the parent company of We Energies Utilities.

21. The unsophisticated consumer would not understand that the "Original Creditor" and "Creditor" entities in <u>Exhibit A</u> were actually the same creditor and would think that the debt had been sold to a third-party debt buyer when it had not.

22. The misrepresentation that a debt has been assigned to a third-party debt buyer is a material false statement about the character and legal status of the account.

23. A debt collector must *clearly* identify the relationship between the debt and its creditor:

> If the validation notice required under § 1692g(a)(2) does not identify the current creditor clearly and accurately, the law has been violated. A plaintiff need not offer additional evidence of confusion or materiality to prove the violation.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

24. "*Clear* identification of the current creditor serves the important purpose of helping unsophisticated consumers avoid fraud and the potential for double payments." *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *5-6 (S.D. Ind. Sept. 19, 2018) (citing *Janetos*, 825 F.3d at 319 and *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *4).

25. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

26. Moreover, <u>Exhibit A</u> states that the "payoff amount" is $134.57.

27. The reference to a "payoff amount" of $134.57 is confusing and misleading.

4

28. The normal meaning of the term "payoff amount" is the amount a consumer must pay to satisfy the debt in full. *See,* https://www.consumerfinance.gov/ask-cfpb/what-is-a-payoff-amount-is-my-payoff-amount-the-same-as-my-current-balance-en-205/ ("Your payoff amount is how much you will actually have to pay to **satisfy the terms of your mortgage loan and completely pay off your debt.**") (emphasis added).

29. In contrast, the normal meaning of "settling" a debt is that the debt is permanently resolved in exchange for a payment of a portion, usually a percentage, of the alleged balance.

30. The use of "payoff amount" to refer to a settlement offer amount in Exhibit A is especially confusing because Exhibit A also contains the following:

> This serves as notice to you that ERC® has been authorized to report your delinquent account to the national credit bureaus when allowed by applicable law.

31. On the face of Exhibit A, it is unclear what will happen if the consumer makes a payment of the "payoff amount."

32. The reference to the "payoff amount" suggests that the debt would be treated as though it had been paid in full.

33. It is impossible to determine whether Defendant, or the creditor, could, or would, continue to report the "resolved" debt to consumer reporting agencies as "settled in full" or "paid in full." *See, e.g., Knight v. Midland Credit Mgmt.*, 755 Fed. Appx. 170, 175-76 (3d Cir. 2018).

34. In credit reporting, a formerly delinquent account that is designated "paid in full" has a less-negative impact on the consumer's "creditworthiness" than the same account designated "settled in full for less than the full balance," with all other variables being equal.

35. The consequences of misleading a consumer as to whether the account would be reported as "paid in full" or "settled in full" is material to the unsophisticated consumer "because

5

Case 2:20-cv-01416-SCD   Filed 10/28/20   Page 5 of 18   Document 7

it may affect whether a debtor makes a payment and which option he or she chooses." *Knight*, 755 Fed. Appx. at 176.

36. Whether and how the debt would be credit reported is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (discussing settlement offers and observing that, "Where the FDCPA requires clarity … ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA), *cross motions for summary judgment denied by, Dixon v. Scott*, 2018 U.S. Dist. LEXIS 133076.

37. <u>Exhibit A</u> also states:

> When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

38. The statement "When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account

6

or to process the payment as a check transaction" however, is false, deceptive, and misleading to an unsophisticated consumer.

39. An unsophisticated consumer would understand the statement that "you authorize us to use information from your check to make an electronic fund transfer from your account" to get around the written date on post-dated checks, and would think that Defendant was reserving the right to use *some* of the information on the check – the routing number and account number and amount – to process a post-dated check irrespective of the date written on the check.

40. It is reasonable for an unsophisticated consumer to understand that a check processed as an "electronic fund transfer" would occur as soon as the date the payment instrument was received irrespective of post-dating. Indeed, Wis. Stat. § 404.401(3) states that a customer should give her bank notice that she is issuing a post-dated check or risk the possibility that the bank will charge the payment against her account before the date of the check:

> A bank may charge against the account of a customer a check that is otherwise properly payable from the account, even though payment was made before the date of the check, unless the customer has given notice to the bank of the postdating describing the check with reasonable certainty. The notice is effective for the period stated in s. 404.403 (2) for stop-payment orders, and must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it before the bank takes any action with respect to the check described in s. 404.303. If a bank charges against the account of a customer a check before the date stated in the notice of postdating, the bank is liable for damages for the loss resulting from its act. The loss may include damages for dishonor of subsequent items under s. 404.402.

41. The representation or implication that Defendant may process post-dated checks on the date of receipt is false. The FDCPA expressly prohibits "depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument." 15 U.S.C. § 1692f(4).

42. Gordon read Exhibit A.

7

43. Gordon was confused and misled by <u>Exhibit A</u>.

44. The unsophisticated consumer would be confused and misled by <u>Exhibit A</u>.

*Facts relating to Plaintiff Zagorski*

45. On or around September 10, 2020, Defendant mailed a debt collection letter to Plaintiff Zagorski regarding an alleged debt. A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

46. Upon information and belief, the alleged debt referenced in <u>Exhibit B</u> was allegedly incurred for personal, family, or household purposes, namely cellular telephone services.

47. The alleged debt referenced in <u>Exhibit B</u> is allegedly owed to "AT&T" and formerly owed to "AT&T Mobility." "AT&T Mobility LLC or AT&T U.S. Mobility, also known as AT&T Wireless, marketed as simply AT&T, is an American telecommunications company. It is a wholly owned subsidiary of AT&T Inc. and provides wireless services in the United States, including Puerto Rico and the U.S. Virgin Islands. AT&T Mobility is the largest wireless carrier in the United States, with 176.7 million subscribers as of the end of Q3 2020." <u>https://en.wikipedia.org/wiki/AT%26T_Mobility</u>.

48. Zagorski disputes the alleged debt in its entirety.

49. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by a computer, and with the information specific to the alleged debt inserted by the computer.

50. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

51. <u>Exhibit B</u> states:

> When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

8

52. The statement "When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction," and the further statement that "funds may be withdrawn from your account as soon as the same day we receive your payment," however, are false, deceptive, and misleading to an unsophisticated consumer.

53. An unsophisticated consumer would understand the language that "you authorize us to use information from your check to make an electronic fund transfer from your account," and that funds may be withdrawn on the same day the check is received, to get around the written date on post-dated checks. The consumer would think that Defendant was reserving the right to use *some* of the information on the check – the routing number and account number and amount – to process a post-dated check, irrespective of the date written on the check.

54. It is reasonable for an unsophisticated consumer to understand that a check processed as an "electronic fund transfer" would occur as soon as the date the payment instrument was received irrespective of post-dating. Indeed, Wis. Stat. § 404.401(3) states that a customer should give her bank notice that she is issuing a post-dated check or risk the possibility that the bank will charge the payment against her account before the date of the check.

55. The representation or implication that Defendant may process post-dated checks on the date of receipt is false. The FDCPA expressly prohibits "depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument." 15 U.S.C. § 1692f(4).

56. Zagorski read <u>Exhibit B</u>.

57. Zagorski was confused and misled by <u>Exhibit B</u>.

58. The unsophisticated consumer would be confused and misled by <u>Exhibit B</u>.

9

### *The FDCPA*

59. The FDCPA creates both substantive and procedural rights for consumers, and violations of those rights risk harm to concrete interests that the FDCPA protects. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a

lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

60. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

61. Misrepresentations of the character, amount or legal status of any debt, including misrepresentations relating to credit reporting or settlement of an alleged debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls

11

squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

62. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

63. 15 U.S.C. § 1692e(2) specifically prohibits any "false representation of the character, amount, or legal status of any debt."

64. 15 U.S.C. § 1692e(8) specifically prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

65. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

66. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## The WCA

67. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

68. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

69. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

70. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

71. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

72. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats.

§§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

74. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

### COUNT I – FDCPA

76. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Count I is brought on behalf of Plaintiff Gordon.

78. <u>Exhibit A</u> is confusing and misleading as to the name of the creditor and the character and legal status of the alleged debt.

79. Defendant violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(10).

14

## COUNT II – FDCPA

80. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Count II is brought on behalf of Plaintiff Gordon.

82. <u>Exhibit A</u> includes a settlement offer that is confusing and misleading as to how Defendant will credit report the "resolution."

83. Defendant violated 15 U.S.C. §§ 1692e, 1692e(8), 1692e(10), 1692f.

## COUNT III -- FDCPA

84. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85. Count III is brought on behalf of both Plaintiffs.

86. By stating "When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction," <u>Exhibits A and B</u> indicate that Defendant would process a postdated check in advance of the postdate.

87. <u>Exhibits A and B</u> are false, deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

88. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692f(4).

## COUNT IV – WCA

89. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. Count IV is brought on behalf of both Plaintiffs.

91. By stating "When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction," <u>Exhibit A</u> indicates that Defendant would process a postdated check in advance of the postdate.

92. <u>Exhibits A and B</u> could reasonably be expected to threaten and harass Plaintiffs and falsely threatens to take an action which Defendant lacked the legal authority to take.

93. <u>Exhibits A and B</u> similarly violate the FDCPA.

94. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

95. Plaintiffs bring this action on behalf of two proposed nationwide classes, each with an associated Wisconsin subclass.

96. Class I, consists of (a) all natural persons in the United States, (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect an alleged debt incurred for personal, family, or household purposes, (d) between September 10, 2019 and October 28, 2020, inclusive, (e) where neither letter was not returned by the postal service.

97. Plaintiffs also bring this action on behalf of a Wisconsin subclass that consists of all members of Class I that are natural persons in the State of Wisconsin.

98. Plaintiff Gordon is the designated representative for Class I and the Wisconsin subclass of Class I.

99. Class II, consists of (a) all natural persons in the United States, (b) who were sent a collection letter, (c) containing the language: "When you provide a check as payment, you

authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution."; (d) seeking to collect an alleged debt incurred for personal, family, or household purposes, (e) between September 10, 2019 and October 28, 2020, inclusive, (f) where the letter was not returned by the postal service.

100. Plaintiffs also bring this action on behalf of a Wisconsin subclass that consists of all members of Class II that are natural persons in the State of Wisconsin.

101. Both Plaintiffs are the designated representatives for Class II and the Wisconsin subclass of Class II.

102. Each class and subclass is so numerous that joinder is impracticable.

103. Upon information and belief, there are more than 50 members of each class and subclass.

104. There are questions of law and fact common to the members of each class and subclass, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

105. Plaintiffs' claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

106. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

17

107. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

108. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 28, 2020

**ADEMI LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com